**SO ORDERED: March 14, 2008.**



        **Basil H. Lorch III**
        **United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| RANDALL A. WILLIAMS | ) | CASE NO. 06-70970-BHL-13 |
| FRANCES M. WILLIAMS, | ) | |
|     Debtors. | ) | |
| _____ | ) | |
| LYNNVILLE NATIONAL BANK, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | ADV. NO. 07-57192 |
| | ) | |
| RANDALL A. WILLIAMS and | ) | |
| FRANCES M. WILLIAMS, | ) | |
|     Defendants. | ) | |

**JUDGMENT**

This matter was originated by a Complaint filed by the Plaintiff, Lynnville National Bank ["LNB" or the "Bank"] on May 16, 2007, and came before the Court for trial on the **Amended Complaint to Determine Validity, Extent, and Priority of Liens** subsequently filed on October 11, 2007. The trial was held on January 24, 2008, at which time the parties presented evidence and testimony. At the conclusion thereof, the Court granted the parties fourteen (14) days to submit

additional evidence, and in accordance therewith, the Defendants, Randall and Frances Williams [the "Williams"] filed a Post Trial Memorandum on February 13, and LNB's Submission of Additional Evidence was filed on February 15, 2008.

The Court, having considered the foregoing and being fully and sufficiently advised, does now make the following Findings of Fact and Conclusions of Law:

Findings of Fact

1. The Defendants, Randall and Frances Williams [the "Williams"], owned and operating a bowling alley in Boonville, Indiana, under the name of Lincoln Lanes, Inc.

2. The Williams, as officers of Lincoln Lanes, Inc., executed and delivered to LNB the following Promissory Notes:

   a. Note dated July 8, 2003, in the principal amount of $370,000 (Loan 1289) [Plaintiff's Exhibit "A"];

   b. Note dated October 26, 2004, in the principal amount of $255,000 (Loan 1945) [Plaintiff's Exhibit "B"];

   c. Note dated July 1, 2005, in the principal amount of $30,000 (Loan 2185) [Plaintiff's Exhibit "C"];

   d. Note dated July 27, 2005, in the principal amount of $65,000 (Loan 2212) [Plaintiff's Exhibit "D"].

3. A Commercial Guarantee was concurrently executed by the Williams in conjunction with each of the foregoing Notes.

4. By instrument dated November 17, 2003, the Williams granted LNB a mortgage on their personal residence at 3966 Trails End Road, Boonville, Indiana, in an amount not to exceed $120,600.

5. By instrument dated October 26, 2004, the Williams granted LNB a mortgage on their

personal residence at 3966 Trails End Road, Boonville, Indiana, in an amount not to exceed $255,000.

6. On October 26, 2004, Lincoln Lanes, Inc. and LNB entered into a Business Loan Agreement related to Loan No. 11945 in the amount of $255,000.[1]

7. On October 26, 2004, the parties entered into a Commercial Security Agreement which granted LNB a security interest in equipment.

8. On November 18, 2004, a Change in Terms Agreement[2] was executed by and between Lincoln Lanes, Inc. and LNB which served to release the Bank's lien on certain named collateral, specifically, a mortgage dated July 8, 2003 on the Williams' prior residence at 2856 Old DeGonia Road, Boonville, Indiana.

9. In or about February of 2005, Lincoln Lanes ceased doing business and Randall Williams a/k/a Randy Williams surrendered the keys to Mark Barkley ["Barkley"], Vice President of LNB, Chandler Branch.

10. Barkley, in an effort to maintain value and keep the business operational, arranged to lease the business premises to Ron Evans d/b/a Premier Investments. The business was, as a result, only closed for about two weeks.

11. Barkley was advised that certain bowling leagues had paid fees to Lincoln Lanes but there was no corresponding monies in the business checking account. Therefore, in the interest of

---

[1] Although the Bank asserts that Business Loan Agreements were executed in conjunction with each of the stated loans, only the one "representative copy" was produced into evidence at trial.

[2] The Change in Terms Agreement impacted Loan No. 1289, issued in the amount of $370,000.

3

maintaining the good will of the various leagues and thus protecting LNB's business interests, LNB took an assignment of those claims and reimbursed the various leagues its respective fees in a total amount in excess of $10,000.

12. According to the Affidavit of Ron Evans [LNB's Submission of Additional Evidence filed February 15, 2008], the machine used to oil the bowling lanes [the "Lane Oiler"] was in disrepair at the time he took possession of the bowling alley. Further, that "[u]pon comparing the price of a new machine to that of fixing the old machine, I decided that a new lane oiler was the most prudent course of action given that the repairs were costly and I could get no guarantee that the repairs would last long-term." [Affidavit, ¶¶ 6, 9].

13. A new lane oiler was purchased by LNB on or about January 11, 2006, for a total purchase price of $20,140.00. [Plaintiff's Exhibit "H"].

14. Randy Williams testified that the bowling alley was certified by the Evansville Bowling Association in September or October, 2005 and that the Lane Oiler never had any mechanical problems that couldn't be repaired and that it was operational through the time that the premises were surrendered. Williams further testified that Evans contacted him when a maintenance man at the bowling alley improperly connected a line to a control panel, shorting out the control panel, and causing the Lane Oiler to malfunction. He further testified that the Lane Oiler was, in fact, repaired.

15. Based upon the aforesaid testimony, and there being nothing other than a self-serving affidavit to establish the necessity of replacement, the Court finds that the Lane Oiler was functioning at the time of the transfer.

16. Evans, in his Affidavit, states that the sewer drainage line attached to the bowling

alley was not draining properly when he took possession of the property. He goes on to state that Hydromax identified low spots which caused the lines to back up and that an additional line was added as the best option. Although a receipt dated April 12, 2006, was offered into evidence reflecting a charge of $819.75 to service and clean the lines, there is no proof of the remaining expense incurred by Evans to correct the sewer problem, other than the allegation in his Affidavit that "the cost of the work was more than $5,000.00. The receipt for the work was destroyed in a fire that burned the bowling alley portion of the business." [Affidavit, ¶¶10, 11].

17. LNB tendered a check in the amount of $5,000.00 to Ronald and Rebecca Evans on June 1, 2006, which purports to cover their expenses for sewer repair on the bowling alley. [Plaintiff's Exhibit "I"].

18. The Court finds that there were ongoing problems with the sewer lines that necessitated repair which is in the nature of an improvement to real estate.

19. On or about September 7, 2006, or about three (3) months subsequent to the transfer of ownership of the business property, the Indiana Department of Revenue filed six (6) tax warrants on the subject property for delinquent sales and withholding taxes incurred between September and November of 2005. The liens threatened the renewal of Evan's liquor license. In the interests of maintaining the liquor license, LNB issued a check to Ron Evans on September 27, 2006, in the amount of $10,123.17, to satisfy the tax liens.

Conclusions of Law

1. The Bank's claim for various league fees is not the type of expense that is authorized or envisioned under the terms of the Promissory Notes, Commercial Guarantees, Commercial Security Agreements, Mortgages, or Business Loan Agreements. The type of expenditures

contemplated under the terms of the Business Loan Agreement are those expenses incurred or paid by the Bank in order to preserve its interest in the collateral, which consists of the real property and the equipment. The Commercial Security Agreement grants the Lender the authority to lease or sell the collateral in the event of default and provides that expenses incurred in "preparing for sale and selling the Collateral" are deemed part of the indebtedness secured by the Agreement.

The Banks efforts to sustain the value of the business and maintain Evans' good will were certainly justified from a business perspective. Nevertheless, payment of league fees is not that type of expense that explicitly impacts either the real property or the equipment. Likewise, the Court does not construe it to be an expense incurred to prepare the collateral for sale, but rather an expense voluntarily incurred to facilitate a sale. As such, the Court finds that the league fees do not constitute a secured claim.

2.  The purchase of the new lane oiler does not constitute a secured claim. There was conflicting evidence as to the condition of the existing machinery and the necessity of replacement. Williams testified that the bowling alley had been certified by the Evansville Bowling Association just a few months prior to the time that the property was surrendered. The new lane oiler was not purchased until almost a year after Evans took over the business operations. Although the expenditure may have been necessary to facilitate the sale of the premises to Evans, the Court finds that it was not a necessary repair or expense of sale under the terms of the parties various Agreements.

3.  The Court is satisfied that there were ongoing problems with the sewage system on the real estate. In order to correct those problems, Evans incurred expenses in identifying and resolving the drainage problem. Because the sewer repair is in the nature of an improvement to real

6

estate, and correction of the sewage problem improved the habitability of the premises, it is a covered expense. Unfortunately, LNB was only able to produce evidence of a $819.75 receipt for sewer repair. LNB asserts a secured claim of $5000 for sewer repair based upon a check issued to the Evans for $5,000. Evans, in his Affidavit, contends that repair was in excess of $5,000 but any receipts were destroyed in a fire that has since destroyed the bowling alley.[3] Based upon the lack of evidence, the Court awards the Bank a secured claim in the amount of $819.75.

4.  On September 27, 2006, LNB tendered a check in the amount of $10,123.17 to Evans to payoff delinquent state withholding and sales taxes incurred from 9/30/05 to 11/30/05. Payment of taxes is specifically authorized under the Business Loan Agreement which provides:

> LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral <u>or if Borrower fails to comply with any provision of this Agreement</u> or Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, <u>Lender on Borrower's behalf may</u> (but shall not be obligated to) <u>take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interest, encumbrances and other claims, at any time levied or placed on any Collateral</u> and paying all costs for insuring, maintaining and preserving any Collateral. . . . (emphasis added).

Tax warrants were issued on the 15th and 31st of May, 2006, and filed with the Warrick County Clerk on May 15 and June 2, in the name of Lincoln Lanes, Inc. For some reason these tax debts were not paid when the property was sold. However, a portion of Lincoln Lanes' Note was still unpaid, and the Note was still collateralized by the Williams' Commercial Guarantee and Mortgage, and the Business Loan Agreement was still in place. There seems to be no dispute that the taxes were

---

[3] Although the Court does not doubt Evans' allegation that his receipts were destroyed, alternate evidence of the repair work could presumably have been obtained by the individual or agency that was paid for the repair.

7

incurred by Lincoln Lanes and the renewal of the liquor license was imperilled due to the unpaid taxes. Because the Bank acted properly in discharging the tax debt, that debt is a secured claim under the terms of the parties various Agreements.

     5.     Inasmuch as the Mortgage authorizes reasonable attorneys' fees, the Court does award attorney fees in an amount commensurate with the debt sought to be recovered. The Bank, being entitled to a secured claim in the amount of $10,942.92, is further awarded attorney fees in the amount of $5,000.00, for a total secured claim in the amount of $15,942.92.

     **IT IS SO ORDERED AND ADJUDGED**.

                                                # # #

Distribution to:

Mark E. Neff
224 W. Locust St., P.O. Box 603
Boonville, IN 47601

Andrew Dennis Thomas
Thomas, Dunlap & Nesmith
123 N.W. Fourth St., Ste. 214
Evansville, IN 47708

U.S. Trustee
101 W. Ohio St.. Ste. 1000
Indianapolis, IN 46204